IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NA'IMAH FERDINAND-DAVENPORT    *
                                          *
      v.                                    *          Civil No. CCB-10-850
                                          *
THE CHILDREN'S GUILD             *
                                          *
                                          *
                                  ******

## MEMORANDUM

Na'imah Ferdinand-Davenport ("Davenport") brought this employment discrimination action against her former employer, The Children's Guild ("TCG"). Davenport alleges pregnancy discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000(e)(k), codified as part of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*; Title 20 of the Maryland State Government Article;[1] and Article 4 of the Baltimore City Code. Now pending before the court is TCG's motion to dismiss. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the defendant's motion will be granted in part and denied in part.

## BACKGROUND

The plaintiff, a licensed social worker, began employment with TCG in the position of Clinician/Social Worker on November 6, 2007. After her hiring, Davenport consistently received positive reviews regarding her performance from her supervisor, Monte Ephraim, and she was promoted to the position of Admissions Coordinator on August 14, 2008. Two days

---

[1] The complaint alleges a violation of Article 49B of the Code of Maryland. This has been recodified as Title 20 of the State Government Article. *See* Md. Code Ann., State Gov't §§ 20-101 *et. seq.* (2010). TCG has construed the plaintiff's claim as a claim of discrimination in violation of Title 20. (*See* Def's Mot. Dismiss at 12–13.) The court will do the same.

1

after she received this promotion, Davenport informed TCG that she was pregnant. She reports no immediate adverse effects of this announcement. (Compl. ¶¶ 10–13.)

On October 20, 2008, when Davenport was approximately five months pregnant, her supervisor, LaMar Williams, notified her that her position might be eliminated as a result of low student enrollment. Although the defendant's Human Resources Director, John Moore, received an email confirming the elimination of the plaintiff's position on November 10, 2008, he did not convey this information to Davenport until November 17, 2008. At that time, Mr. Moore and Mr. Williams informed Davenport that she could apply to two available social worker positions with TCG: (1) a position at a school in Annapolis ("the Annapolis position") and (2) a position at a group home in Baltimore City ("the Baltimore position"). (*Id.* at ¶¶ 14–18.)

Davenport was not the only employee affected by TCG's layoffs. She acknowledges that seven or eight other employees lost their jobs at the same time she was discharged. (*Id.*, Ex. A.) One, Linda Turner, was also a social worker, but Ms. Turner was not pregnant at the time these events occurred. She had been hired by TCG as a Clinician on October 6, 2008. Ms. Turner was not told that her position was in jeopardy until October 31, 2008, almost two weeks after Davenport received the same information. Davenport alleges TCG "then" offered Ms. Turner the Baltimore and Annapolis positions and provided her an opportunity to tour both facilities.[2] (*Id.* at ¶¶ 20–23.) Ms. Turner was "transferred" to the Annapolis position on November 17, 2008. (*Id.* at ¶ 25.)

---

[2] Plaintiff's Opposition to Defendant's Motion to Dismiss specifies that Ms. Turner was told about the available positions on October 31, and that the plaintiff was informed there were no available positions on November 3, 2008. (Pl. Opp. at 3–4.) These facts do not appear in the complaint, and the court does not rely on them in reaching its decision. Nevertheless, under the facts alleged, the court may reasonably infer that Ms. Turner was informed of the positions before Davenport was told of them on November 17, 2008. For instance, Ms. Turner was provided with a chance to tour the facilities, an opportunity not afforded to Davenport in the hours between when she was told of the position and called to express her interest in it.

During the evening of November 17, 2008, the day Davenport was informed of the Baltimore and Annapolis positions, she left a message with Human Resources Director John Moore advising him she was interested in the Annapolis position. (*Id.*, Ex. A.) When Davenport spoke with Kelly Grant, a TCG Human Resources Recruiter, on November 18, 2008, Ms. Grant informed Davenport she would have to interview for the position because there was another candidate. Mr. Moore told Davenport that two TCG executives, Terry Manny and Ellery Joyeau, controlled the process for filling the Annapolis position. At approximately 6:00 p.m. on November 18, Ms. Grant informed Davenport that Ms. Turner had secured the Annapolis position. (*Id.* at ¶¶ 27–29.) Davenport was never provided with an opportunity to interview for the position.

The following day, Ms. Grant inquired about Davenport's interest in the Baltimore position. Davenport did not assert her interest in the position at that time, but rather told Ms. Grant that she would make a decision by the next morning. Ms. Grant was not available when Davenport called at 8:00 a.m. on November 20, 2008, and Davenport left a message requesting more information about salary and benefits for the Baltimore position. When they next spoke at approximately 10:00 a.m. on November 20, 2008, Ms. Grant informed Davenport by telephone that an outside candidate had filled the Baltimore City position. (*Id.* at ¶¶ 30–32.)

Davenport filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Baltimore City Community Relations Commission on November 24, 2008, alleging discrimination on the basis of sex and pregnancy in TCG's failure to hire her for one of the available social worker positions. (*Id.*, Ex. A.) The EEOC issued a Notice of Right to Sue on January 13, 2010. (*Id.*, Ex. B.) The complaint alleges that TCG discriminated against Davenport in violation of Title VII (Count I), Article 20 of the Maryland State Government

3

Article (Count II), and Article 4 of the Baltimore City Code (Count III) by unlawful discharge, denying fair access of the employment process, and denying equal terms and conditions of employment on the basis of pregnancy.

ANALYSIS

I. *Rule 12(b)(1)*

The defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). TCG argues, however, that the plaintiff failed to exhaust her administrative remedies. "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). Accordingly, the defendant's motion will be treated as a motion to dismiss for lack of subject matter jurisdiction for the purpose of this argument. *See* Fed. R. Civ. P. 12(b)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (explaining that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. County Commissioners of Carroll County, Maryland*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

A. Count I: Discriminatory Discharge in Violation of Title VII

The plaintiff's right to bring suit under Title VII is limited by the charge of discrimination she filed with the Equal Employment Opportunity Commission. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). She may bring only those claims that "can reasonably be expected to follow" from the administrative investigation of this charge. *Id.* (quoting *Chisholm v. United States Postal Service*, 665 F.2d 482, 491 (4th Cir. 1981)). TCG contends that Davenport's claim for discriminatory discharge should be dismissed because she failed to challenge her discharge in her charge of discrimination. (Def.'s Mot. Dismiss at 5.) By her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim. *See Mentch v. Eastern Savings Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) ("[Plaintiff] abandoned her harassment claim by failing to address that claim in her opposition to [defendant's] motion for summary judgment, or to offer clarification in response to [defendant's] reply brief."). Even if Davenport had not abandoned this claim, dismissal would be appropriate because an administrative investigation would not reasonably be expected to unearth evidence of discriminatory discharge. Davenport failed to claim discriminatory discharge in her charge, alleging only discriminatory failure to hire. She also "acknowledge[d] that The Children's Guild has laid off at least seven or eight other employees . . . ." (Compl., Ex. A.) Accordingly, Davenport's Title VII claim will be considered only under a theory of discriminatory failure to hire.

B. Count II: Title 20 of the Maryland State Government Code

TCG argues that Davenport's claims under Title 20 of the Maryland State Government Article must be dismissed because she failed to file a complaint with the Maryland Commission on Human Relations ("MCHR"). Maryland law permits a "complainant" to bring a civil claim

under Title 20 only if "the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent" and "at least 180 days have elapsed since the filing of the administrative charge or complaint." Md. Code Ann., State Gov't § 20-1013(a).

TCG acknowledges Davenport filed a charge with the EEOC and Baltimore City Community Relations Commission, but contends this is insufficient to satisfy the requirements set forth by Maryland law. In support of this argument, TCG notes that only a "complainant" may bring a claim under Title 20, and section 20-101 defines a complainant as "a person that files a complaint alleging a discriminatory act under this title." Md. Code Ann., State Gov't § 20-101(c). According to TCG, this requires filing a complaint with the "Commission," meaning the MCHR. *See* Md. Code Ann., State Gov't § 20-101(b) (defining "Commission" as "the Commission on Human Relations").

Maryland law permits "[a]ny person claiming to be aggrieved by an alleged discriminatory act" to "file a complaint with the Commission." Md. Code Ann., State Gov't § 20-1004(a). Section 20-1004(c) provides, however, "A complaint filed with a federal or local human relations commission within 6 months after the date on which the alleged discriminatory act occurred shall be deemed to have complied with this subsection." Md. Code Ann., State Gov't § 20-1004(c).[3] The precise meaning of 20-1004(c) has been debated, although a reasonable interpretation is that a party may satisfy the state complaint requirement by filing a charge with the EEOC or a local commission within six months of the alleged discriminatory act. A contrary interpretation has been offered in connection with the state filing requirement of the federal Age Discrimination in Employment Act (ADEA). *See Riggle v. CSX Transportation,*

---

[3] Article 49B, the precursor to Title 20, contained identical language. *See* Md. Ann. Code art. 49B, § 9(a) (repealed). The court, therefore, relies on judicial interpretations of the earlier statute.

*Inc.*, 755 F. Supp. 676, 678 (D. Md. 1991) ("[A]lthough the last sentence of section 9(a) may appear to relieve a person from filing with the MCHR when that person has filed with the EEOC, courts have furnished a contrary interpretation" for the purpose of the state filing requirement of the ADEA); *Scheller v. Hydrotherm, Inc.*, 728 F. Supp. 377, 380 (D. Md. 1989) ("While the Maryland statute can be interpreted in several ways," the plaintiff must file with the MCHR to satisfy the ADEA). "[A] charge filed with a local human relations commission is deemed to be a charge filed with the Maryland Commission on Human Relations," however. *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 644 n.21 (D. Md. 1978).

Here, Davenport filed a charge with the EEOC and the Baltimore City Community Relations Commission on November 24, 2008, mere days after the alleged discriminatory incidents. (Compl. Ex. A.) At minimum, the charge filed with the local commission is deemed to have been filed with the MCHR. This satisfies the requirements of Title 20. The defendant's motion to dismiss Count II on these grounds will be denied.

II.   Rule 12(b)(6)

The remainder of the defendant's motion is properly analyzed under Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at

assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 1949 (internal quotations and citation omitted).[4]

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the

---

[4] Davenport argues the motion to dismiss may be granted only if "it is certain that no relief could be granted under any set of facts provable by the plaintiff." (Pl. Opp. 5 (citing *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1993)).) This standard, first outlined in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957), was abrogated by *Twombly*. *Twombly*, 550 U.S. at 563 (*Conley*'s "no set of facts" language is "best forgotten as an incomplete, negative gloss on an accepted pleading standard").

8

"incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewcz* is consistent with more recent case law).[5]

### A. Count I: Failure to Hire in Violation of Title VII

A plaintiff can prove that an adverse employment action was the product of discrimination either by producing direct evidence of discrimination or, where, as in this case, there is no direct evidence, using the burden-shifting framework set out in *McDonnell Douglas* to raise an inference of discrimination. *Janey v. N. Hess Sons, Inc.*, 268 F. Supp. 2d 616, 621 (D. Md. 2003) (citing *Karpel v. Inova Health System Services,* 134 F.3d 1222, 1227–28 (4th Cir. 1998)). To set forth a *prima facie* case of discrimination for failure to hire under the *McDonnell Douglas* framework, a plaintiff must show four elements: "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996) (citations omitted). TCG concedes Davenport has established the first and third elements but argues her complaint should be dismissed because she failed to plead sufficient facts to satisfy the second and fourth elements of the *McDonnell Douglas* framework.

---

[5] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'") (citations omitted).

TCG argues Davenport did not apply or seek to apply to an open position because the Annapolis position had been filled by the time she applied and she never clearly expressed interest in the Baltimore position. The *McDonnell Douglas* framework only demands that a plaintiff seek to apply, rather than actually apply, to an open position. *Id.* Moreover, the Fourth Circuit has cautioned that "*McDonnell Douglas'* prima facie case requirements are 'not necessarily applicable in every respect to differing factual situations.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 487 (4th Cir. 2005) (quoting *McDonnell Douglas*, 411 U.S. at 802 n.13) (finding an exception to the requirement that a discharged employee show she was replaced by an employee outside of the protected class where different decisionmakers control hiring and firing).

On the facts pled by Davenport, it is plausible that she applied or sought to apply for an open position. TCG's employees repeatedly did not answer the phone when Davenport called regarding her interest in the positions, so Davenport was forced to leave messages. The pleadings do not establish clearly the time at which she left these messages in relation to the time at which TCG hired others to fill the positions. Davenport left a message expressing her interest in the Annapolis position on November 17, the same day Ms. Turner "transferred" to this position, and it is not certain which of these events occurred first. Indeed, the following day, Ms. Grant informed Davenport that she would have to interview for the position because there was another candidate. Ms. Grant did not tell Davenport the position had been filled until that evening. With respect to the Baltimore position, Davenport left a message at 8:00 a.m. on November 20 inquiring about the position's salary and benefit, and by the time Ms. Grant called Davenport at 10:00 a.m., the position had been filled. The time at which this decision was made in relation to Davenport's phone call is not specified.

This element also does not apply so strictly as to preclude a plaintiff from pleading a prima facie case where her efforts to communicate her interest in a position were impeded. The court can reasonably infer from Davenport's complaint that TCG's actions limited her ability to apply for the positions while they were open. Davenport was not informed that she was being discharged but could apply to the Baltimore and Annapolis positions until November 17, even though Mr. Moore learned her position was being eliminated on November 10[6] and Ms. Turner was told about the Baltimore and Annapolis positions prior to November 17. Once she learned of the positions, Davenport struggled to reach TCG's employees to inform them of her interest and gather information about the positions. In her EEOC charge, for example, Davenport reports she began to contact Ms. Grant "because she was more responsive to my inquiries regarding the processes to apply for the social worker position." (Compl., Ex. A.) Davenport left messages regarding the positions when she was unable to reach TCG's employees to express her interest, but TCG made hiring decisions before returning these messages. TCG also failed to provide Davenport with information regarding the process that it followed in making hiring decisions. Although an employer is not obligated to hold open a position while an employee decides whether to accept it, a defendant should not escape responsibility for discriminatory failure to hire by making the application process so onerous for a candidate within a protected class that she lacks the opportunity to apply to an open position at all.

The cases TCG cites in support of its argument are easily distinguished. In *Johnson v. Armco Inc.*, 548 F. Supp. 1109 (D. Md. 1982), the plaintiff did not express interest in the

---

[6] TCG suggests that Davenport received preferential treatment because she was informed of the possibility that her position would be terminated two weeks before Ms. Turner was told her position was in jeopardy. (Def.'s Mot. Dismiss at 12.) The fact that TCG gave Davenport advance notice of her possible discharge would not prevent a reasonable jury from finding that it failed to hire her for discriminatory reasons. TCG may have hoped that Davenport would seek out new employment in the interim, eliminating the need to offer her the available positions when it confirmed her discharge.

disputed position until more than one month after the position was filled, after another employee had been trained and begun drawing pay for the job. *Id.* at 1110–12. In addition, the defendant-employer had followed established policy throughout the application process, holding the position open for a specified period and refusing to permit employees to apply after they returned from sick leave. *Id.* at 1110–13. The plaintiff in *Allen v. Prince George's County, Maryland*, 538 F. Supp. 833 (D. Md. 1982), *aff'd* 737 F.2d 1299 (4th Cir. 1984), was not a "bona fide applicant" because there were significant reasons to doubt that she was interested in the available positions. For example, she failed to return a phone call from the defendant's personnel office, and her minimum acceptable salary exceeded the salary offered by the county. *Id.* at 843. In contrast, Davenport alleges she made efforts to apply for the Annapolis position within hours of learning of it and for the Baltimore position within days. TCG did not follow an established policy in selecting Ms. Turner and the third party over Davenport, unlike the employer in *Johnson*. In fact, TCG may have departed from the practice of holding interviews that Ms. Grant suggested was followed when multiple candidates applied for a single position. Davenport's repeated phone calls to TCG's Human Resources employees indicated her ongoing interest in the positions. Davenport has alleged sufficient facts to establish the second element.

TCG also contends Davenport failed to establish the fourth element, an inference of pregnancy discrimination. To survive a motion to dismiss, the complaint must set forth specific facts giving rise to an inference of discrimination; conclusory allegations of discrimination are insufficient. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990). Davenport, here, has provided sufficient facts to meet the threshold for surviving a motion to dismiss. Specifically, Davenport alleges TCG did not make her aware of the Baltimore or Annapolis positions until, at most, hours before the Annapolis position was filled. It then selected another employee, who had worked for

12

TCG for only a few weeks, over Davenport, an employee with a year-long history of excellent performance, for the Annapolis position without conducting interviews. Finally, although Davenport was told the Baltimore position remained available on November 19, 2008, by 10 a.m. the following morning TCG had hired a third party—a person with whom TCG had no experience—without returning Davenport's phone call inquiring into the position's salary and benefits. This was done without notifying Davenport's former supervisor, who on November 21, 2008, still sought to have Davenport fill the Baltimore position. (Compl. ¶ 33.)

The three-month period between Davenport's announcement of her pregnancy and the alleged adverse employment action does not prevent these facts from giving rise to an inference of discrimination. *See, e.g.*, *Miles*, 429 F.3d at 491 (interval of one year between birth of child and termination did not prevent a finding of pregnancy discrimination). Nor is it, as TCG claims, "irrational" that Davenport continued to receive high praises from her supervisor after informing him of her pregnancy yet was subject to adverse employment action. Only where the same individual—not company—took both positive and negative employment actions within a short period of time and with knowledge of the plaintiff's membership in a protected class would a finding of discriminatory intent be irrational. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the *same individual* and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." (emphasis added)). Davenport alleges her supervisor, Monte Ephraim, lauded her performance (Compl. ¶ 11), and Mr. Ephraim sought to have her transferred to the Baltimore position. (*Id.* at ¶ 33.) Hiring decisions were made, however, by TCG Executives Terry Manny and Ellery Joyeau. (*Id.* at ¶ 28.)

Davenport's pleading is facially plausible and provides sufficient factual information to place the TCG on notice of her claim. Therefore, the motion to dismiss will be denied.

### B. Count II: Maryland State Law Claims

Count II alleges pregnancy discrimination in violation of Title 20 of the Maryland State Government Article. Title 20 bars an employer from failing to hire an individual "because of the individual's . . . sex . . . or disability." Md. Code Ann., State Gov't § 20-606(a). It further provides, "Disabilities caused or contributed to by pregnancy or childbirth are temporary disabilities for all job-related purposes." Md. Code Ann., State Gov't § 20-609(a)(1). TCG argues that Maryland law prohibits only discrimination on the basis of disabilities resulting from pregnancy, not on the basis of pregnancy itself. Maryland courts, however, recognized claims of pregnancy discrimination under Article 49B, the substantively similar precursor to Title 20. *See Makovi v. Sherwin-Williams Co.*, 561 A.2d 179 (Md. 1989) (holding that the plaintiff could not bring a claim for abusive discharge, where she alleged she was fired due to her pregnancy, because she had a statutory remedy for sex discrimination under Article 49B, as well as Title VII); *State Commission on Human Relations v. Freedom Express/Domegold, Inc.*, 825 A.2d 354, 355 (Md. 2003) (noting, without adverse comment, that a party filed a complaint with the MCHR alleging both sex and pregnancy discrimination); *Maryland Commission on Human Relations v. Downey Communications, Inc.*, 678 A.2d 55, 61 (Md. Ct. Spec. App. 1996) (same). This court, therefore, concludes that Title 20 prohibits pregnancy discrimination. TCG's motion to dismiss Count II will be denied.

### C. Count III: Baltimore City Claims

TCG argues Count III should be dismissed because Article 4 of the Baltimore City Code does not provide a private right of action, and, assuming it did so, Maryland law does not

authorize any action under the Baltimore City Code. By her failure to address these arguments in her opposition to TCG's motion to dismiss, Davenport has abandoned this claim. *See Mentch*, 949 F. Supp. at 1247.[7] Thus, Count III will be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss will be granted in part and denied in part. Specifically, Count III will be dismissed, and the plaintiff may not proceed on Count I under a discriminatory discharge theory. A separate Order follows.

October 6, 2010                                         /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge

---

[7] Had Davenport not abandoned her claim, dismissal would remain appropriate because the Baltimore City Code does not provide for a private right of action. *See* Balt., Md., City Code art. 4 (2010).